UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:20-CV-00205-GNS-HBB

LATASHA JONES                                                                                         PLAINTIFF

v.

QP1, INC.                                                                                              DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment (DN 24). The motion is ripe for adjudication. For the reasons outlined below, the motion is **GRANTED**.

### I.  STATEMENT OF FACTS

Latasha Jones ("Jones") began working for QP1, Inc. ("QP1") in May 2019. (Am. Compl. ¶ 14, DN 19). QP1 is a staffing agency that places temporary workers in vacant positions for its clients. (Am. Compl. ¶ 12). Jones was initially hired as a staffing coordinator and was later promoted to branch manager. (Jones Dep. 37:25-38:2, DN 24-2; Am. Compl. ¶ 15). As branch manager, Jones reported to Connie Harris ("Harris"), the President of QP1 during the relevant time period. (Jones Dep. 44:20-21).

On November 10, 2022, Jones fell ill and was later diagnosed with COVID-19. (Am. Compl. ¶ 18; Jones Decl. ¶¶ 11, 25, DN 29-1). Before and after receiving her diagnosis, Jones was in regular communication with Harris regarding her condition and other work-related matters. (*See, e.g.*, Jones Dep. 70:13-19, 71:3-7, 90:16-91:25, 173:18-21; *see also* Am. Compl. ¶ 19; Jones Decl. ¶¶ 12, 17, 20).

During this time, Jones experienced difficulties with other QP1 employees, which she discussed with Harris. (Jones Dep. 90:10-91:9). Ultimately, QP1's Chief Operating Officer, Mary

Wagner ("Wagner"), sought to address these difficulties by opening an investigation after speaking with Jones. (Jones Dep. 110:2-10). Throughout her investigation, Wagner discovered information about Jones' performance as branch manager that led her to terminate Jones' employment with QP1 on November 23, 2020. (Def.'s Mot. Summ. J. Ex. 9, DN 24-10).

Jones initiated this action against QP1 for interference under the Family and Medical Leave Act ("FMLA"). (Am. Compl. ¶ 1). Now, QP1 has filed a motion for summary judgment, which Jones opposes. (Def.'s Mot. Summ. J., DN 24; Pl.'s Resp. Def.'s Mot. Summ. J., DN 29 [hereinafter Pl.'s Resp.]).

## II.   JURISDICTION

The Court has subject-matter jurisdiction of this matter based upon federal question jurisdiction. *See* 28 U.S.C. § 1331.

## III.   STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Thereafter, the burden shifts to the nonmoving party to present specific facts indicating a genuine issue of a disputed material fact essential to the case, beyond "some metaphysical doubt." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The nonmoving party must present facts demonstrating a material factual dispute that must be presented to "a jury or judge to resolve the parties' differing versions of the truth at trial[;]" the evidence, however, is "not required to be resolved conclusively in favor of the party asserting its existence . . . ." *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-

89 (1968). If the record, taken as a whole, could not lead the trier of fact to find for the nonmoving party, the motion should be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

## IV. DISCUSSION

The FMLA dictates that it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided [in it]." 29 U.S.C. § 2615(a)(1). For her interference claim to be successful, Jones must show: (1) she was an eligible employee; (2) QP1 was an employer subject to the FMLA; (3) she was entitled to leave under the FMLA; (4) she gave QP1 notice of her intention to take FMLA leave; and (5) QP1 denied her the FMLA benefits to which she was entitled. *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005) (citation omitted). QP1 does not dispute that Jones is an eligible employee and that it is a covered employer. (*See* Def.'s Mem. Supp. Mot. Summ. J. 11, DN 24-1 [hereinafter Def.'s Mem.]). It argues, however, that Jones has failed to show she was entitled to FMLA leave and that she did not provide QP1 with notice of her intention to take such leave. (Def.'s Mem. 11).[1]

### A. Entitlement to FMLA Protection

To be entitled to FMLA protection, Jones must show that she suffered a "serious health condition," which is "an illness, injury, impairment, or physical or mental condition that involves

---

[1] Jones states that QP1 "seeks summary judgment with an incomplete deposition transcript, no sworn testimony from any of the cast of characters that run [QP1], and with unauthenticated documents[,]" but does not elaborate as to why this should result in the denial of QP1's motion. (Pl.'s Resp. 2). As for purportedly incomplete evidence, once QP1 shows the absence of a genuine issue of material fact, then Jones bears the burden of demonstrating that a dispute regarding that fact exists; thus it would be her responsibility to provide the rest of her deposition and any other evidence to accomplish this task. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586-87. Insofar as unauthenticated evidence is concerned, the Court's analysis only considers information that could otherwise be admissible. *See Lossia v. Flagstar Bancorp, Inc.*, 895 F.3d 423, 430 (6th Cir. 2018) ("[E]vidence considered at the summary judgment stage need not be 'in a form that would be admissible at trial,' as long as the evidence could ultimately be presented in an admissible form." (quoting *Celotex Corp.*, 477 U.S. at 324)). Jones does not challenge the admissibility of any specific proof relied upon by QP1.

(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." *Lackey v. Jackson Cnty.*, 104 F. App'x 483, 487 (6th Cir. 2004); 29 U.S.C. § 2611(11). Jones bears the burden of showing that she suffered a serious health condition, and she cannot avoid the question by "simply alleging it to be so." *Lackey*, 104 F. App'x at 490; *Bond v. Abbott Labs.*, 7 F. Supp. 2d 967, 974 (N.D. Ohio 1998) (internal quotation marks omitted) (citation omitted).

Jones did not establish that she had a serious health condition that entitled her to protection under the FMLA. She was not hospitalized; rather, Jones alleges that she received continuing treatment by a health care provider. (Jones Dep. 132:5-7; Pl.'s Resp. 7). "Continuing treatment" requires a "period of incapacity," such as the inability to work, that lasts "more than three consecutive, full calendar days." 29 C.F.R. §§ 825.113(b), 825.115(a). Jones did not receive continuing treatment because she was not incapacitated, evidenced by her continuous ability to work. *See* 29 C.F.R §§ 825.113(b), 825.115(a). Jones stated in her deposition that she worked from home throughout her COVID-19 diagnosis, undermining any claim that she was incapacitated. (Jones Dep. 173:2-6). Not only did Jones continue to work but she repeatedly asked to return to the office despite her positive test results. (Jones Dep. 78:23-25, 87:1-88:9). Thus, Jones has not proved a period of incapacity sufficient to establish continuing treatment. *See* 29 C.F.R. § 825.115(a). As such, there is no genuine issue of fact regarding Jones' lack of incapacitation, so the Court need not reach the issue of the actual treatment she received.[2] *Alcegaire v. JBS USA, LLC*, No. 3:15-cv-266-DJH-CHL, 2018 U.S. Dist. LEXIS 102788, at *6

---

[2] In addition to incapacity, to demonstrate a serious health condition involving continuing treatment a plaintiff must prove she received "[t]reatment two or more times, within 30 days of the first day of incapacity" by a health care provider or "[t]reatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of the health care provider." 29 C.F.R. § 825.115(a)(1)-(2). Jones has made no such showing.

(W.D. Ky. June 20, 2018); *accord Bond*, 7 F. Supp. 2d at 973 ("If a plaintiff cannot show that . . . she had a condition that incapacitated . . . her, 'the Court's inquiry is over and summary judgment is appropriate.'" (citation omitted)).

Jones argues that a jury should determine whether she had a serious health condition. (Pl.'s Resp. 7). Yet, "[w]hether an illness qualifies as a serious health condition under the FMLA is a legal question which the court must determine." *West v. Pella Corp.*, No. 5:16-CV-154-TBR, 2017 U.S. Dist. LEXIS 173753, at *13 (W.D. Ky. Oct. 20, 2017) (alteration in original) (internal quotation marks omitted) (citing *Taylor v. Autozoners, LLC*, 706 F. Supp. 2d 843, 849 (W.D. Tenn. 2010)). Jones also avers that the Families First Coronavirus Response Act ("FFCRA") required QP1 to provide leave for Jones to quarantine after her COVID-19 diagnosis. (Pl.'s Resp. 7). The parties, however, both agree that QP1 was not subject to the FFCRA's requirements. (Pl.'s Resp. 8; Def.'s Reply Mot. Summ. J. 8, DN 30). Neither argument, however, overcomes Jones's failure to establish that she suffered from a serious health condition. Therefore, Jones has not shown the existence of a genuine issue of material fact as to whether she was entitled to benefits under the FMLA.

    B.    **Notice of Intent to Take Leave**

In addition to showing entitlement to FMLA leave, Jones must also offer proof that she notified QP1 of her intention to take such leave in order to invoke the protections of the FMLA. *Wallace v. FedEx Corp.*, 764 F.3d 571, 586 (6th Cir. 2014) (quoting *Brohm v. JH Props., Inc.*, 149 F.3d 517, 523 (6th Cir. 1998)). Although an employee is not required to mention the FMLA by name, "the critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." *Brohm*, 149 F.3d at 523 (internal quotation marks omitted) (citation omitted). "[P]art of reasonable

notice generally includes an indication of 'the anticipated timing and duration of the leave.'" *Wallace*, 764 F.3d at 586 (quoting 29 C.F.R. § 825.302(c)).

      A factfinder could not conclude that Jones provided QP1 with adequate notice of her intention to take leave after her COVID-19 diagnosis. Notably, Jones did not tell Harris, or any other superior at QP1, that she needed time off. (Jones Dep. 96:12-22). Instead, Jones updated Harris about how she was feeling and the results of her COVID-19 tests. (Jones Dep. 70:13-19, 71:3-7, 71:23-25, 143:4-7; Jones Decl. ¶¶ 20, 25). Additionally, Jones asked to come into the office despite her positive test result because she believed work needed to be completed, and later told Harris that she felt "fine." (Jones Dep. 87:1-88:9, 173:18-21). Jones never requested sick leave or provided QP1 with a doctor's note saying she needed time off.[3] (Jones Dep. 101:3-4, 132:8-17, 133:9-22). Therefore, Jones' actions cannot be construed to reasonably suggest to her employer that she needed time off. Jones' efforts to keep Harris apprised of her condition are not sufficient to lead Harris to conclude Jones needed time off, especially as Jones actively sought to work. Furthermore, Jones offered no information regarding "the anticipated timing and duration of the leave." *Wallace*, 764 F.3d at 586 (internal quotation marks omitted) (quoting 29 C.F.R. § 825.302(c)). Plainly, Jones did not provide QP1 with notice of her intent to seek FMLA leave.

      Jones places significant weight on the fact that she told Harris on November 11, 2020, that she felt "like death." (Pl.'s Resp. 8, 10; Jones Dep. 70:18-19; Jones Decl. ¶ 12). This phrase did no more to inform Harris about potential time off than any of the communications mentioned

---

[3] Jones received a "work excuse" document from her doctor on November 25, 2020, that retroactively stated she could not work from November 12, 2020, to November 16, 2020. (Jones Dep. 131:5-10; *see* Def.'s Mot. Summ. J. Ex. 11, DN 24-12). Jones obtained this document two days after her employment with QP1 was terminated. (Am. Compl. ¶ 32; Jones Dep. 131:5-10). Nonetheless, Jones never provided this document to QP1, so the doctor's note could not have put QP1 on notice that Jones requested time off before she was fired. (Jones Dep. 132:8-17, 133:19-22).

above, particularly when considered alongside Jones' request to return to the office after she tested positive.  Jones also avers that she only worked because she felt forced to but did not explain how this enhances the adequacy of the notice she provided.  (Pl.'s Resp. 11).  Like her previous argument, Jones contends that a jury should determine whether QP1 received sufficient notice. (Pl.'s Resp. 8).  "[T]he question of whether any notice was given, and if so, what the notice consisted of and when it was given, is one of fact.  However, the question of whether the notice satisfied the statutory requirement is one of law." *K & M Joint Venture v. Smith Int'l, Inc.*, 669 F.2d 1106, 1111 (6th Cir. 1982).  Thus, it would be improper to defer this consideration to the jury. Ultimately, the facts do not constitute adequate notice.

Jones cites a Seventh Circuit case to suggest that an employee's unusual behaviors can serve as constructive notice to an employer that it must inform the employee of her right to take FMLA leave.  (Pl.'s Resp. 13 (citing *Stevenson v. Hyre Elec. Co.*, 505 F.3d 720 (7th Cir. 2007)). Jones argues that it was uncharacteristic of her to take time off due to sickness or to discuss her health with Harris, so QP1 should have been on notice that she needed to be informed of her right to take leave.  (Pl.'s Resp. 13).  The Sixth Circuit, however, has only gone so far as to note that "an employer's knowledge of an employee's prior medical history may be relevant to the determination of whether an employee gave adequate notice to invoke FMLA rights in a particular instance."  *Miles v. Nashville Elec. Serv.*, 525 F. App'x 382, 387 (6th Cir. 2013).

A *lack* of prior medical history, evidenced by Jones' assertion that she had not been to a doctor in eighteen months and that it was unusual for her to tell Harris that she was feeling sick, is not sufficient notice to QP1 that she needed leave. (*See* Jones Dep. 70:20-21; Jones Decl. ¶¶ 13-14).  These events occurred during the height of the COVID-19 pandemic, so Jones' diagnosis for such a pervasive illness was insufficient to require QP1 to infer that Jones needed FMLA leave,

despite a lack of previous illness. The facts of this case are in contrast to one where an employer knows of a chronic condition so that it would reasonably be on notice that the condition was recurring. *See, e.g.*, *Barrett v. Detroit Heading, LLC*, 311 F. App'x 779, 791-92 (6th Cir. 2009). Jones' arguments are insufficient to establish a genuine issue of material fact as to notice. Without adequate notice of Jones' intent to use FMLA leave, her interference claim cannot survive. *See Walton*, 424 F.3d at 485. Therefore, summary judgment in favor of QP1 is proper.[4]

## V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (DN 24) is **GRANTED**, and Plaintiff's claim is **DISMISSED WITH PREJUDICE**. The Clerk shall strike this matter from the active docket.

There being no just cause for delay, this is a final and appealable order.

Greg N. Stivers, Chief Judge
United States District Court

January 11, 2023

cc: counsel of record

---

[4] QP1 sets forth alternative arguments that Jones did not suffer prejudice from any alleged interference and that QP1 had legitimate reasons for terminating Jones. (Def.'s Mem. 16-18); *see Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002) (stating that the FMLA "provides no relief unless the employee has been prejudiced by the violation . . . ." (citations omitted)); *Demyanovich v. Cadon Platings & Coatings, L.L.C.*, 747 F.3d 419, 427 (6th Cir. 2014) (stating that if a plaintiff successfully presents a prima facie case, "the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions . . . ." (citation omitted)). As Jones failed to demonstrate an FMLA violation, these arguments do not need to be addressed.